UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. |
| ) | |
| APPROXIMATELY $111,516.68 FROM ) | |
| US BANK ACCOUNT ENDING IN 2686, ) | |
| IN THE NAME OF INVESTORS TITLE ) | |
| COMPANY – ESCROW ACCOUNT, ) | |
| SUPPORTING CHECK 387143, DATED ) | |
| AUGUST 22, 2016, PAYABLE TO ) | |
| JIUNN-REN CHEN AND IRMA KHOJA; ) | |
| ) | |
| APPROXIMATELY $241.74 FROM ) | |
| BANK OF AMERICA ACCOUNT ) | |
| ENDING IN 9336, IN THE NAME OF ) | |
| JIUNN-REN CHEN AND IRMA KHOJA; ) | |
| and ) | |
| ) | |
| APPROXIMATELY $182.48 FROM ) | |
| BANK OF AMERICA ACCOUNT ) | |
| ENDING IN 0319, IN THE NAME OF ) | |
| JIUNN-REN CHEN AND IRMA KHOJA, ) | |
| ) | |
| Defendants. ) | |

**VERIFIED COMPLAINT FOR FORFEITURE**

COMES NOW Plaintiff the United States of America, by and through its attorneys, Richard G. Callahan, United States Attorney for the Eastern District of Missouri, and Richard E. Finneran, Assistant United States Attorney for said district, and for its Verified Complaint for Forfeiture states as follows:

1

*Nature of the Action*

1. This is a civil action *in rem* brought by the United States, pursuant to 18 U.S.C. § 981, seeking forfeiture of all right, title, and interest in the above-captioned defendant property, which is property involved in attempted unlawful monetary transactions in violation of 18 U.S.C. § 1956.

2. The defendant property includes approximately $111,516.68 from US Bank account ending in 2686, in the name of Investors Title Company – Escrow Account (the "Investors Title Account"), supporting check 387143 (the "Check"), dated August 22, 2016, payable to Jiunn-Ren Chen and Irma Khoja.

3. The defendant property includes approximately $241.74 from Bank of America account number ending in 9336, in the name of Jiunn-Ren Chen and Irma Khoja (the "Checking Account").

4. The defendant property includes approximately $182.48 from Bank of America account number ending in 0319 in the name of Jiunn-Ren Chen and Irma Khoja (the "Savings Account").

*Jurisdiction and Venue*

5. This Court has jurisdiction over the subject matter pursuant to 28 U.S.C. §§ 1331, 1345, and 1355 because this is a civil action arising under the laws of the United States, because it is a proceeding of forfeiture, and because it has been brought by the United States.

6. This Court has jurisdiction over the parties pursuant to 28 U.S.C. §§ 1345 and 1355 because this is a proceeding for forfeiture, and because it has been brought by the United States.

7. Venue is placed in the Eastern District of Missouri pursuant to 28 U.S.C. § 1355 because an act giving rise to the forfeiture occurred in the Eastern District of Missouri and because the defendant property is located within the Eastern District of Missouri.

### *Basis for Forfeiture*

8. The defendant property is subject to forfeiture under 18 U.S.C. § 981(a)(1)(A) because it is property involved in an attempted violation of 18 U.S.C. § 1956, as set forth in detail below.

9. The defendant property is subject to forfeiture without regard to its traceability to criminal activity because it is contained in an account into which identical traceable property had been deposited and therefore may be forfeited as fungible property under Title 18, United States Code, Section 984.

### *Legal Background*

10. Title 18, United States Code, Section 981(a)(1)(A) provides that "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of section 1956" and "any property traceable to such property" is subject to civil forfeiture.

11. Title 18, United States Code, Section 1956(a)(2)(A) makes it a crime to "transport, transmit, or transfer, or attempt to transport, transmit, or transfer . . . funds from a place in the United States to or through a place outside the United States . . . with the intent to promote the carrying on of specified unlawful activity."

12. Title 18, United States Code, Section 1956(c)(7) defines "specified unlawful activity" to include "any act or activity constituting an offense listed in section 1961(1)" of Title 18.

3

13. Title 18, United States Code, Section 1961(1) lists, among other offenses, obstruction of justice in violation of Section 1503, economic espionage in violation of Section 1832, and unlawful monetary transactions in violation of Section 1956.

14. Title 18, United States Code, Section 1503 makes it a crime to "corruptly . . . obstruct, or impede, or endeavor to . . . obstruct, or impede, the due administration of justice."

15. Title 18, United States Code, Section 1832(a)(1) makes it a crime to knowingly steal, or without authorization appropriate, take, carry away, or conceal, or by fraud, artifice, or deception obtain a trade secret related to a product or service used or intended for use in interstate or foreign commerce, with the intent to convert the trade secret for the economic benefit of anyone other than the owner thereof, and intending or knowing that the offense will injure any owner of the trade secret.

16. Title 18, United States Code, Section 1832(a)(2) makes it a crime to knowingly copy, duplicate, download, upload, replicate, transmit, deliver, send, communicate, or convey a trade secret related to a product or service used or intended for use in interstate or foreign commerce, with the intent to convert the trade secret for the economic benefit of anyone other than the owner thereof, and intending or knowing that the offense will injure any owner of the trade secret.

17. Title 18, United States Code, Section 1832(a)(3) makes it a crime to possess a trade secret related to a product or service used or intended for use in interstate or foreign commerce, knowing the trade secret to have been stolen or appropriated, obtained, or converted without authorization, with the intent to convert the trade secret for the economic benefit of anyone other than the owner thereof, and intending or knowing that the offense will injure any owner of the trade secret.

18. Title 18, United States Code, Section 1832(a)(4) makes it a crime to attempt to commit any of the offenses prohibited by Section 1832(a)(1), (a)(2), or (a)(3).

19. Title 18, United States Code, Section 1832(a)(5) makes it a crime to conspire to commit any of the offenses prohibited by Section 1832(a)(1), (a)(2), or (a)(3), so long as one or more conspirator does any act to effect the object of the conspiracy.

### *Theft of Trade Secrets*

20. Beginning in 2014 and continuing until about June 1, 2016, Jiunn Ren Chen ("Chen") worked for The Climate Corporation ("TCC") and/or Monsanto Company ("Monsanto"), which is TCC's parent company.

21. In the course of his employment with TCC and Monsanto, Chen gained access to confidential trade secrets and proprietary information of TCC and Monsanto.

22. As part of his employment with TCC and Monsanto, Chen was issued two company-owned laptops: a Macbook Pro (the "Macbook"), and a Lenovo ThinkPad T440 (the "ThinkPad") (together, the "Laptops").

23. Also as part of his employment with TCC, Chen was given a TCC email address and access to a TCC Google Drive account.

24. On a date unknown but prior to August 2015, Chen contacted a representative of Sinochem China National Seed Corporation ("Sinochem"), at which time he expressed interest in obtaining employment with Sinochem.

25. Sinochem is an agricultural company that is a competitor of Monsanto's and which is sponsored by the People's Republic of China.

26. In March 2016, Chen received an offer of employment from Sinochem.

5

27. On or about May 4, 2016, Chen traveled to China.

28. While in China, Chen met with representatives of Sinochem.

29. On or about May 15, 2016, Chen returned to the United States.

30. On or about June 1, 2016, Chen submitted his resignation from TCC.

31. At the time of his resignation, Chen did not disclose his offer of employment from Sinochem, indicating only that he intended to move back to Taiwan to spend more time with his family.

32. During the evening of June 1, 2016, after Chen had resigned, Chen accessed the TCC Google Drive account and downloaded six files.

33. The next day, on or about June 2, 2016, Chen returned the Laptops to TCC and Monsanto.

34. That evening, Chen again access the TCC Google Drive account and downloaded an additional two files.

35. Between approximately June 4, 2016 and June 10, 2016, Chen accessed the TCC Google Drive account on five more occasions and downloaded an additional 55 files.

36. The files downloaded by Chen after his resignation contained trade secrets and confidential proprietary information.

37. Analysis of the Laptops revealed that on or about June 1, 2016, the date of Chen's resignation, a mass data deletion was performed on both Laptops.

38. Analysis of Laptops revealed the presence of various non-standard software that had been placed on the laptop, including encryption software and "scrubbing" software designed to prevent forensic recovery of electronic data.

39. There was no work-related reason for Chen to have this software on the Laptops.

40. Further analysis of the Macbook revealed that between May 25, 2016 and June 1, 2016, several applications were utilized to "clean" data from the Macbook, in such a way as to frustrate forensic examination thereof, including "Eraserscanner," "Disk Drill," and "Clean My Mac."

41. Analysis of the Laptops also revealed that the Macbook had been used to gain unauthorized access to another TCC employee's account at or around 7:25 a.m. on or about June 1, 2016, the date of Chen's resignation.

42. Further analysis revealed that Chen had used his TCC email address to transmit confidential trade secrets and proprietary information to other email accounts on at least five occasions between approximately August 19, 2014 and February 14, 2015.

### *Obstruction of Justice by Flight*

43. In and around June 2016, the Federal Bureau of Investigation initiated an investigation the possible unauthorized conversion of TCC's and Monsanto's trade secrets by Chen.

44. Chen became aware of the FBI's investigation no later than June 16, 2016.

45. On or about Friday, August 19, 2016, attorneys representing Monsanto made a request to Chen's attorney, Richard Sindel, that Mr. Sindel disclose the password for a portable storage device that had been formerly in Chen's possession but which was then in Monsanto's possession.

46. Mr. Sindel reported that Chen did not recall the password.

47. Monsanto attempted to reset the password using answers to security questions provided by Chen through Mr. Sindel, but the attempt was unsuccessful because the answers provided were incorrect.

48. Also on or about August 19, 2016, Mr. Sindel advised Monsanto's attorneys that Chen had not accepted any job offer and did not have any future travel plans.

49. At an unknown time on or about August 19, 2016, Chen and Khoja each signed a separate Durable Power of Attorney, which appointed Richard H. Sindel as their Attorney in Fact to manage financial, real estate, and other affairs.

50. On or about August 19, 2016, Chen bought three one-way airline tickets to Shanghai, China for himself, his wife, and his daughter, with a departure date for the very next evening. Chen did not purchase return travel tickets.

51. At approximately 11:30 a.m. on or about Saturday, August 20, 2016, Chen and his family departed St. Louis Lambert International Airport for Shanghai, China by way of Detroit Metropolitan Airport. After arriving in Shanghai, Chen and his family departed for Wuhan, China on or about August 21, 2016 at around 9:05 p.m. local time.

52. Chen informed Customs and Border Patrol personnel (hereinafter referred to as "CBP") that he ultimately planned to travel to Taipei, Taiwan.

53. CBP informed Chen that he needed to return to the United States within six months because failure to do so would violate the terms of his legal permanent resident alien status.

54. Chen, in response to CBP's advisory, stated he would return from Taipei in approximately two months.

55. As of the date of this Complaint, Chen has not returned to the United States since his departure on or about August 20, 2016.

## *The Sale of the House*

56. On Monday, August 22, 2016, Chen sold his family's home, located at 6345 Bancroft, St. Louis, MO 63109 (the "House") to an individual with the initials C.C. (the "Buyer").

57. Chen and Khoja were scheduled to appear at Investors Title Company to close on the sale of the House.

58. Instead, Mr. Sindel appeared as their attorney in fact and signed documents on their behalf to close on the sale of the House.

59. In exchange, Chen and his wife received the purchase price of $193,400.00, which funds were tendered by the Buyer to Investors Title Company, who issued a US Bank check number 387143 to Jiunn-Ren Chen and Irma Khoja in the approximate amount of $111,516.68.

60. On or about August 23, 2016, Chen and Khoja signed a letter directing Investors Title Company to make out the check for $111,516.68 from the sale the House to Mr. Sindel, "so that Mr. Sindel may deposit it into his client trust account for future disbursement to Mr. Chen and Ms. Khoja."

61. Investors Title Company refused to issue a new check payable to Mr. Sindel.

62. On or about August 25, 2016, Chen sent an email to Investors Title Company informing them "We've decided to have the check deposited into one of our accounts instead of changing the payee for the check. We don't want to further delay receiving the money by going through this process."

63. On or about August 26, 2016, the Honorable Noelle C. Collins, Magistrate Judge for U.S. District Court for the Eastern District of Missouri, issued a warrant to seize the sum of $111,516.68 from the US Bank account of Investors Title Company ending in 2686, representing

the sum supporting the check issued to Chen and his wife from the sale of the House. The warrant was executed the same day.

64. The proceeds from the sale of the House were intended by Chen to be used to support his flight and unauthorized possession of trade secrets.

### *Deposits and Withdrawals to Promote Chen's Flight*

65. On May 16, 2016, Chen deposited $9,400.00 in cash (the "Deposit") into his Bank of America checking account ending in 9336 (the "Checking Account").

66. The Deposit was made one day after Chen returned from his meeting in China with Sinochem.

67. No other cash deposits of such a large amount were made to the Checking Account between January 29, 2016 and August 24, 2016.

68. Chen also held a savings account at Bank of America with an account number ending in 0319 (the "Savings Account").

69. Between August 23, 2016 and August 30, 2016, the Chens have made numerous transfers out of the Checking Account and the Savings Account in an apparent attempt to aid Chen's flight.

70. On August 23, 2016, Chen conducted a wire out of the Savings Account in the amount of $10,000.00, an amount equal to approximately 66,600 Chinese yuan, which wire transfer was sent to an account at the Industrial and Commercial Bank of China.

71. The wire transfer record reflects the notation "FX:CNY," indicating that the transfer involved a conversion of American dollars to Chinese yuan.

72. The memo line on the wire transfer request reads "Family Support."

73. Also on August 23, 2016, Chen or his wife initiated an online transfer for an additional $10,000.00 to a credit account with the Hongkong and Shanghai Banking Corporation, which appears to be connected to a credit card.

74. In four separate transactions on August 24, 2016, the Chens withdrew approximately $1,505.04 from the Checking Account while in Wuhan, China, an amount equal to approximately 10,000 Chinese yuan.

75. On or about August 26, 2016, the Honorable Noelle C. Collins, Magistrate Judge for U.S. District Court for the Eastern District of Missouri, issued a warrant to seize all funds in the Checking Account and the Savings Account. The warrant was executed the same day.

76. Between approximately August 24, 2016 and August 26, 2016, when the seizure warrant was executed, the Chens made withdrawals and transfers from the Checking Account and the Savings Account that reduced the balance in the Checking Account from approximately $4,933.39 to only $241.74, and the balance in the Savings Account from approximately $20,739.86 to only $182.48.

77. The funds withdrawn and transferred from the Checking Account and the Savings Account were withdrawn and transferred to promote Chen's flight and unauthorized possession of trade secrets.

78. The funds seized from the Checking Account and the Savings Account were intended to be used to promote Chen's flight and unauthorized possession of trade secrets.

### *Count I – Forfeiture as Property Involved in Attempted Unlawful Monetary Transactions*
### (Against All Defendants)

79. Each of the foregoing allegations is hereby incorporated by reference as it set forth fully herein.

80. The defendant property has been involved in an attempt to promote Chen's continued carrying away, concealment, and possession without authorization of trade secrets, in violation of Title 18, United States Code, Section 1832, as well as an attempt to promote Chen's efforts to obstruct and impede the due administration of justice by absconding from the United States to China, in violation of Title 18, United States Code, Section 1503.

81. The defendant property is subject to forfeiture under 18 U.S.C. § 981(a)(1)(A) because it is property traceable to property involved in an attempted unlawful monetary transaction in violation of 18 U.S.C. § 1956.

WHEREFORE the United States prays that this Court decree that all right, title, and interest in the defendant property be condemned and forfeited to the United States of America, and for such other and further relief as the Court deems just and proper.

Dated: February 17, 2017

Respectfully submitted,

RICHARD G. CALLAHAN
United States Attorney

*/s/ Richard E. Finneran*
RICHARD E. FINNERAN, #60768MO
Assistant United States Attorney
111 South 10th Street, Suite 20.333
Saint Louis, Missouri 63102
Telephone:  (314) 539-2200
Facsimile:   (314) 539-2287
*richard.finneran@usdoj.gov*

## **VERIFICATION**

I, Robert Polanco, hereby verify and declare under penalty of perjury that I am a Special Agent with the Federal Bureau of Investigation, that I have read the foregoing Verified Complaint and know the contents thereof, and that the matters contained in the Verified Complaint are true to my own knowledge and belief.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on: __2/17/2017__
                    (date)

_____
Robert Polanco
Special Agent
Federal Bureau of Investigation